# In the United States Court of Federal Claims

Case Nos. 05-26T, 06-27T and 06-636T (Consolidated)
(Filed:  April 3, 2007)
TO BE PUBLISHED

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * *<br><br>**J & J FERNANDEZ Ventures, L.P., et al.,**<br>　　　　　　　　　*Plaintiffs,*<br>　　　v.<br><br>**THE UNITED STATES OF AMERICA,**<br>　　　　　*Defendant.*<br><br>* * * * * * * * * * * * * * * * * * * * * * * * * * | Taxes; Partnerships; TEFRA; Assessments; Adjustments; Statute of limitations; Period of limitations; I.R.C. § 6501(a); I.R.C. § 6229(a); Final Partnership Administrative Adjustment, FPAA; Partnership level proceeding; Partner level proceeding. |

　　　**M. Todd Welty, Josh O. Ungerman**, Meadows, Owens, Collier, Reed, Cousins and Blau, L.L.P., Dallas, TX, Attorneys-in-Charge for Plaintiffs.  Luskin & Annis, P.S., Spokane, WA, Counsel of Record for Plaintiff.

　　　**Grover Hartt, III**, Tax Division, Department of Justice, Washington, D.C., Attorney of Record for the Defendant.  With him on the briefs were **Eileen J. O'Connon**, Assistant Attorney General, **David D. Gustafson**, Chief, Court of Fed. Claims Section, **Cynthia E. Messersmith** and **Cristopher R. Egan**.  **David R. House**, Of Counsel for Defendant.

　　　**Arielle Cohen**, **Sarah Leigh Martin,** law clerks.

## OPINION

**BASKIR**, Judge.

　　　This case is a consolidation of three complaints for readjustment of partnership items under section 6226 of the Internal Revenue Code ("I.R.C.").  Cross motions for summary judgment were filed in the first case ("J & J One") and incorporated into the second case ("J & J Two") after it was consolidated.  At the request of the Parties, the third case ("J & J Three") has also been consolidated with the first two.  However, it involves somewhat different legal arguments.  Those arguments have not been briefed and are not addressed in this opinion.

The merits of this case ultimately hinge on the proper tax treatment of a complex series of transactions that took place in 1999.  Those transactions establish the tax basis for shares of Invitrogen stock sold by the Plaintiffs in 2000-2003.  The Government's position is that the Plaintiffs inflated the basis of the stock through a series of transactions sometimes referred to as a "Son of BOSS" tax shelter, resulting in lower tax payments on the gain from the sales.  The Plaintiffs dispute the Government's characterization of the 1999 transactions.

The only question before the Court at this stage of the litigation is whether, in assessing tax for the years 2000-2003, the Internal Revenue Service ("IRS") is barred by a statute of limitations from reaching back to "re-calculate" or "consider" items reported on partnership returns for the 1999 tax year.  The facts necessary for that legal determination are not disputed, making it appropriate for summary judgment.

We hold that the IRS is not barred from re-calculating items from closed years for purposes of assessing taxes in open years.  **The Defendant's cross motion for partial summary judgment is hereby GRANTED and the Plaintiffs' motion for summary judgment is DENIED.**

I.     Facts

The amount of Plaintiffs' tax liability for the years 2000-2003 depends upon the amount of gain realized on the sale in each year of shares of stock in Invitrogen, Inc. ("Invitrogen").  The Government asserts that the Plaintiffs' cost basis in the stock was zero and therefore the total proceeds of the sales are taxable gains.

Mr. Fernandez was the co-founder of Invitrogen, and therefore originally had a zero cost basis in the stock.  The Plaintiffs assert that a series of partnership transactions taking place in 1999 allowed them to legally adjust the basis of the stock upwards to approximately $60 million, and therefore the amount of taxable gain from the sales was that much smaller.

A.     The 1999 Transactions

Although the correct characterization of the 1999 transactions is not before the Court in the pending cross motions for summary judgment, a brief summary will be helpful. The facts below are intended only to place the statute of limitations issue in context, and are not material to the present holding.

The 1999 transactions involve five (or possibly six) inter-related entities.  The first is the Fernandez Family Trust ("FFT"), a California trust that predated the 1999 transactions.  The second is JMJV Management Corporation ("JMJV"), a California S corporation.  On or about December 9, 1999, FFT and JMJV formed the third entity, a partnership called J & J Fernandez Ventures, L.P. ("J & J" or "the Partnership").  FFT had a 99.983% limited partner interest in the Partnership.  JMJV was the general and tax matters partner and had a 0.017% interest.

According to the Plaintiffs, a second Partnership with the same name and tax identification number replaced the first Partnership on December 16, 1999.  The Government disputes that a second Partnership was created.  The remaining two entities are the Joan V. Fernandez Descendants' Trust and the Joseph M. Fernandez Descendants' Trust (together "the Descendants' Trusts").  Both are South Dakota trusts created on December 10, 1999.

Four transactions took place in 1999 that constitute the underlying dispute.  First, on or about December 8, 1999, FFT entered into a short sale transaction of United States securities.  FFT borrowed the securities and sold them for approximately $60 million.  Second, on or about December 9, 1999, FFT contributed the proceeds of the short sale and 1,250,341 shares of stock in Invitrogen, Inc., to the newly created Partnership.  Third, on or about December 14, 1999, the Partnership closed the short sale obligation at a loss.  Fourth, on or about December 16, 1999, FFT transferred a 25.5% limited partnership interest in the Partnership to each of the Descendants' Trusts in exchange for a promissory note from each Trust for approximately $15.5 million.

There are two primary disputes regarding the 1999 transactions.  The first dispute concerns how to treat the obligation to close the short sale.  The Government contends that the Plaintiffs' failure to treat the obligation as a liability assumed by the Partnership artificially inflated the partners' basis in the assets of the Partnership.

The second dispute regards the characterization of the transfers of 25.5% interests in the Partnership to each of the Descendants' Trusts.  The Plaintiffs' position is that those transfers constituted a sale of 51% or more of the Partnership.  Such a sale automatically creates a new Partnership under I.R.C. § 708, and enables an adjustment of the Partnership's and Partners' bases under I.R.C. §§ 743(b) and 754.  The Government disputes that the notes from the Descendants' Trusts represented genuine consideration.  For that and other reasons, the Government denies that an actual sale occurred, that a new partnership was created, or that the claimed basis adjustment was proper.

B.      The Timeline of Tax Filings

The cross motions for summary judgment currently before the Court concern the Internal Revenue Service's window of time for taking various actions with regard to prior tax years.  The facts material to disposing of the motions are the filing dates of the various tax returns for 1999-2003 and the dates when the IRS took action to assess taxes for 2000-2003 by issuing notices of Final Partnership Administrative Adjustment ("FPAAs").  Those dates are not disputed.  Rather than recite them here out of context, they are included in the discussion as they become relevant.  Suffice it to say that the 2000 and 2001-2003 FPAAs were issued more than three years after the filing of the 1999 Partnership returns, but within three years of the filing of the 2000 and 2001 Partnership returns.

II.   Procedural Posture

As we noted, this case is a consolidation of three complaints for readjustment of partnership items under § 6226 of the Internal Revenue Code.  J & J One concerns the 2000 FPAA.  J & J Two concerns the 2001-2003 FPAA.  J & J Three concerns the FPAA for 1999 that the IRS issued on April 13, 2006, using the extended six-year statute of limitations provided by § 6501(e).  J & J Three Compl. ¶ 8.  In each case, the primary adjustment in the FPAA is the reduction of the basis of the Invitrogen stock to zero.

On November 16, 2005, the Plaintiffs filed their motion for summary judgment in J & J One, and the motion was fully briefed.  The motion does not address the merits of the case, but only whether a statute of limitations bars the Government's action in this case.  The Parties filed a Consolidated Statement of Uncontroverted Facts ("CSUF") reciting the undisputed facts relevant to the summary judgment motion.  The Court held oral argument in the matter on June 13, 2006.

Meanwhile, on January 9, 2006, the Plaintiffs filed a Complaint in J & J Two.  The Court granted the Plaintiffs' unopposed motion to consolidate the two cases.  The Parties agreed that the pending cross motions for summary judgment would apply to both consolidated cases since the legal issues are the same.  They filed a supplemental Consolidated Statement of Additional Uncontroverted Facts ("CSAUF") in order to update the summary judgment record to include facts relevant to J & J Two.

The third case was filed on September 8, 2006.  Although J & J Three has also been consolidated with the first two cases at the request of the Parties, it involves different statute of limitations arguments.  Arguments specific to J & J Three have not been briefed and are not addressed in this opinion.

III.   Standard of Review

The standard for determination of cross motions for summary judgment is well-known.  Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Rules of the United States Court of Federal Claims 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  When, as here, there are cross motions for summary judgment, the court must evaluate each motion individually, making inferences against the moving party with respect to each motion.  *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed. Cir. 2001).  The existence of *any* factual dispute is not sufficient for a party to survive summary judgment – the dispute of fact must be material to the legal issue.  *Liberty Lobby*, 477 U.S. at 247-48.  As indicated, there is no dispute as to the facts material to the present motions.

IV.   Basics of Partnership Taxation

Partnerships are associations of two or more persons which can carry out business activities, own property and engage in other activities with potential tax

consequences.  However, partnerships do not pay Federal taxes at the entity level.
Instead, items of income, gain, loss, etc. are passed through to the partners based on
their percentage and type of interest in the partnership.  Each individual partner pays
taxes on his or her distributive share of the partnership interests.

Prior to 1982, the tax consequences flowing from an interest in a partnership
were determined only at the level of individual taxpayers.  At the very least, this resulted
in wastefully duplicative administrative proceedings.  Often it led to inconsistent tax
treatment among different partners of the same underlying partnership financial facts.
*See Callaway v. Comm'r*, 231 F.3d 106, 107 (2d Cir. 2000).  In response, Congress
enacted partnership-specific tax provisions as part of the Tax Equity and Fiscal
Responsibility Act of 1982 ("TEFRA"), I.R.C. § 6221 *et seq*.  *See Grapevine Imports,
Ltd. v. United States*, 71 Fed. Cl. 324, 327 (2006).  Under TEFRA, tax-related
determinations are made once, at the partnership level, and the results are applied
consistently to the assessment of each individual partner's tax liability.  *Callaway v.
Comm'r* at 108.

TEFRA requires that "the tax treatment of any partnership item . . . shall be
determined at the partnership level."  I.R.C. § 6231.  A "partnership item" is defined in
the code as

> with respect to a partnership, any item required to be taken into account
> for the partnership's taxable year under any provision of subtitle A to the
> extent regulations prescribed by the Secretary provide that, for the
> purposes of this subtitle, such item is more appropriately determined at
> the partnership level than at the partner level.

§ 6231(a)(3).  The Treasury regulations further define "partnership item" to include
items of income, gain, loss, deduction, or credit of the partnership, as well as
"partnership liabilities."  26 C.F.R. § 301.6231(a)(3)-1(a)(1)(i).  "Partnership liabilities"
include "determinations with respect to the amount of the liabilities. . . ."
§ 301.6231(a)(3)-1(a)(1)(v).  A partnership item includes "the accounting practices and
the legal and factual determinations that underlie the determination of the amount,
timing, and characterization of items of income, credit, gain, loss, deduction, etc."
§ 301.6231(a)(3)-1(b).

In order to determine the tax treatment of a partnership item, the IRS must mail a
"notice of. . . the beginning of an administrative proceeding at the partnership level with
respect to a partnership item" ("NBAP") to each partner, § 6223(a)(1), and later a
"notice of. . . the final partnership administrative adjustment resulting from any such
proceeding" (FPAA), § 6223(a)(2).  After an FPAA is issued, the partners have
150 days to challenge it under § 6226.  If the FPAA is not challenged, or if the
challenge is unsuccessful, the IRS may assess taxes against the partners attributable
to the adjusted partnership item.  I.R.C. § 6225.

V.   <u>Limitation Period for Assessment of Taxes</u>

The parties in this case agree that the sales of Invitrogen stock in 2000, 2001, 2002, and 2003 are partnership items within the meaning of § 6231.  Pls.' Br. in Supp. of Mot. for Summ. J. 25 (hereinafter Pls.' Br.); Def.'s Br. in Supp. of Cross Mot. for Partial Summ. J. 9 (hereinafter Def.'s Br.).  The question is, partnership items for which year or years?  The crux of the Plaintiffs' argument is that the basis of the Invitrogen stock is a result of transactions that occurred in 1999.  Therefore the basis is a partnership item for the year 1999.  It can only be challenged through a timely FPAA directed at that year.  Barring a timely FPAA directed at 1999, the characterization of the 1999 transactions is fixed for all future tax years, and so is the basis of the Invitrogen stock which depends on those transactions.

The Plaintiffs' statute of limitations claim rests on two provisions of the Internal Revenue Code.  The tax code imposes a general statute of limitations for the assessment of taxes under a section headed "Limitations on assessment and collection:"

> (a) General rule. – Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed  (whether or not such return was filed on or after the date prescribed) . . . . For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

I.R.C. § 6501(a).

In addition, the Internal Revenue Code Subchapter on Tax Treatment of Partnership Items (I.R.C.  §§ 6221-6234) includes a section titled "Period of limitations for making assessments" that reads:

> (a) General rule. – Except as otherwise provided in this section, the period for assessing any tax imposed by subtitle A with respect to any person which is attributable to any partnership item (or affected item) for a partnership taxable year shall not expire before the date which is 3 years after the later of –
>
> (1) the date on which the partnership return for such taxable year was filed, or
>
> (2) the last day for filing such return for such year (determined without regard to extensions).

I.R.C. § 6229(a).

A great deal of litigation has gone into determining the meaning and relationship of these two sections of the Internal Revenue Code.  The Federal Circuit has recently settled the issue in its opinion in *AD Global Fund, LLC v. United States*, --- F.3d ----, 2007 WL 624366 (Fed. Cir. 2007).  The court held that § 6229(a) is not a statute of limitations.  Instead, § 6229(a) provides a minimum period for assessing taxes related to partnership items that sometimes operates to extend the time for assessments otherwise provided by § 6501(a):

> Reading § 6229(a) together with § 6501, we conclude that § 6229(a) unambiguously sets forth a minimum period for assessments of partnership items that may extend the regular statute of limitations in § 6501. . . .
>
> [T]he language in § 6229(a) does not state a maximum period. Section 6229(a) employs the term "shall not expire before," which creates a minimum period during which the period for tax assessments for partnership items may not end. This minimum period may expire before or after the maximum period provided in § 6501.

2007 WL at *2-*3.

A.    Calculating the Period of Limitations Under §§ 6501(a) and 6229(a)

J & J One and J & J Two involve assessments of taxes for the tax years of 2000, 2001, 2002 and 2003.  Section § 6501(a) prohibits the "assessment" of taxes after the limitations period has run.  The beginning of the limitations period is triggered by the filing of "the return" by "the taxpayer" for the tax year for which taxes are being assessed.  The filing of returns by other entities with tax consequences for the taxpayer are specifically exempted from triggering § 6501(a).  That means other filings cannot cause the three-year period to start either earlier or later than it otherwise would, unless so provided in other parts of the tax code.  Section 6501 can be trumped by other sections because of the rule of interpretation that "a specific statute ... controls over a general provision," *HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981).

Partnerships do not pay taxes – only the partners do.  Therefore, under § 6501(a), the only tax returns that could trigger the beginning of the standard three year limitations period are the tax returns of the partners for the tax years being assessed.  The earliest of the Partners' returns for tax year 2000 was received by the IRS on October 11, 2001.  CSAUF Pls.' Facts 5, 9 & 13 (hereinafter P_).  The returns for the Descendants' Trusts were received on October 18, 2001.  CSAUF P17, 24.  The issuance of an FPAA, while not itself an assessment of taxes, tolls the limitation period for assessment.  I.R.C. § 6229(d); *Grapevine Imports, Ltd. v. United States*, 71 Fed.Cl. 324, 340 (2006).  The 2000 FPAA was issued on October 12, 2004, just over the three-year § 6501(a) period.  CSUF Def.'s Fact 2 (hereinafter D_).

Under the § 6501(a) limitation period, the Government was certainly on time to assess taxes for 2000 against the Descendants' Trusts.  In the absence of § 6229, the Government would have been one day late to assess taxes for 2000 against the other

Partners.  However, we now know from *AD Global* that the triggering of the § 6501(a) period is delayed to the date of filing the Partnership return.  The Partnership return was filed either October 13 or October 15, 2001 (the Parties disagree on this date).  In either case, the FPAA issued on October 12, 2004, was within the extended period.

The FPAA for tax years 2001-2003 was issued on October 13, 2005.  CSAUF P1.  The earliest of the Partners' returns for 2001 were received October 15, 2002.  CSAUF P14, 26.  The Government was within the period determined by § 6501(a) operating alone.  In fact, the Partnership return for 2001 was not filed until October 20, 2002 (CSAUF P2), so under the § 6229(a) extension, the Government actually had five days of leeway for issuing the FPAA.

Under the *AD Global* reading of § 6501(a) and § 6229(a), the FPAAs for 2000 and for 2001-2003 were timely insofar as the formal dates of the filings are concerned.  The Plaintiffs, however, contend that we must consider the filing date of the return for the year in which the alleged "Son of BOSS" transactions occurred.  In their view, since the crux of the 2000 and 2001-2003 FPAAs is the re-characterization of transactions that took place in 1999, the FPAAs are really for the 1999 tax year and are out of time.

B.     The Tax Returns for the 1999 Tax Year Do Not Trigger Any Limitations Period

The analysis in the previous section assumed that the triggering event for the applicable limitations period was the filing of either a partner or partnership return *for the year for which taxes were being assessed*.  We think this is the only sensible reading of the Internal Revenue Code sections at issue.

The Plaintiffs, however, have always asserted that the IRS is attempting to adjust *1999 partnership items* and that the triggering event for determining the statute of limitations is the filing of returns for 1999.  Pls.' Br. 10, 12.  According to the Plaintiffs, the proper calculation of the period of limitations is as follows: the earliest Partner return for 1999 was filed on April 17, 2000.  CSUF P16.  Two Partnership returns were filed, reflecting the new Partnership allegedly created December 16, 1999 by the 51% transfer to the Descendants' Trusts.   Both Partnership returns were received on April 18, 2000.  CSUF P14, 15.  Under § 6501(a), the latest date for issuing an FPAA for 1999, would be April 18, 2003, more than a year before the first FPAA was actually issued.

The Plaintiffs would have a colorable argument if the Government were *assessing* taxes for 1999.  However, in the actions underlying J & J One and J & J Two, the Government does not assess taxes for 1999.  There were, in fact, no taxable transactions in 1999 involving the stock's basis, because a basis adjustment alone can never trigger an assessment.  Def.'s Br. 17.  The Government considers information about transactions taking place in 1999, and re-characterizes those transactions, but assesses taxes only for the years 2000-2003, which were open years under § 6501(a).

The plain language of § 6501(a) prohibits only the "assessment" of taxes after the limitations period has run.  It does not contain any prohibition on the IRS' use of information from closed years. The Plaintiffs would read § 6501(a) and § 6229(a) to limit not only assessments but also actions which the Parties have variously referred to as "adjustments," "recalculations," "look backs" and "determinations."  The Plaintiffs' reading is not supported by case law.  The case law shows that it is accepted practice in the non-partnership context to determine or adjust tax items more than three years old (and therefore closed for purposes of assessment) in order to assess taxes in a more recent year.

The lead case is *Barenholtz v. United States*, 784 F.2d 375, 380-81 (Fed. Cir. 1986), in which the Federal Circuit stated, "It is well settled that the IRS and the courts may recompute taxable income in a closed year in order to determine tax liability in an open year."  In that case, the court upheld the IRS' ability to re-compute the individual taxpayer's liability for past years that were closed by the statute of limitations in order to correctly determine his liability for an open year.  Rejecting the taxpayer's argument that the general statute of limitations prohibited such a calculation, the court clarified, "Section 6501(a) bars assessments, not calculations. . . "  *Id.*  This, of course, comports with the plain language of section 6501, which refers only to "assessments."

The rule in *Barenholtz* is well established.  In *Phoenix Coal Co. v. Comm'r*, 231 F.2d 420, 421 (2d Cir. 1956), the Court of Appeals confirmed that the Government can consider facts from closed years and recompute gains or losses "in order correctly to determine the amount of taxes for the years in question, but not to determine whether the tax for any other taxable year has been overpaid or underpaid."  The court explained that the three-year period in the limitation statute is calculated in reference to the date of filling "the return in question" (for the year that taxes are being assessed), not returns for prior years.  *Id.*

C.    The *Barenholtz* Rule Applies in the TEFRA Context

The Plaintiffs argue that this well-established principle does not apply in the current case because the passage of TEFRA makes the partnership context different. The ability of the IRS to recalculate items from closed tax years in the partnership context has never been squarely addressed.  However, the Supreme Court has held that when a tax deficiency is assessed against the shareholder of an S-corporation, the filing date of the shareholder's return is the relevant one for purposes of the limitations period.  *Bufferd v. Comm'r*, 506 U.S. 523, 529 (1993).

In other words, the statute of limitations does not prevent the IRS from reaching back to recalculate items on the corporate return, which may be closed, so long as the IRS assesses tax against the taxpayer within 3 years from the date the individual taxpayer filed his return for the tax year being assessed.  *Bufferd*, 506 U.S. at 527. This does not pose an undue administrative burden on the individual taxpayer, who can

take steps to ensure that the corporation keeps adequate records. *Id.* at 532. *Accord Springfield St. Ry. Co. v. United States*, 160 Ct. Cl. 111 (1963). The similarity of partnerships and S corporations for taxation purposes has been recognized. *See Bufferd*, 506 U.S. at 525*; Charlton v. Comm'r*, 990 F.2d 1161, 1163 (9th Cir. 1993).

Nevertheless, Plaintiffs cite several TEFRA cases for their position that "once the statute of limitations has expired on a partnership's tax year, those items are fixed and final and must be accepted in later years." Pl R. Br. at 10. The Plaintiffs rely largely on three cases for this point: *Roberts v. Comm'r*, 94 T.C. 853 (1990); *Gustin v. Comm'r*, 83 T.C.M. (CCH) 1341 (2002); and *Quick v. Comm'r*, 110 T.C. 172 (1998).

We agree with the Government that the various statements extracted from these three cases by the Plaintiffs are unhelpful dicta. All three cases involve deficiency proceedings, which are by definition partner level proceedings. The do not bear on the limitation, if any, that might apply to partnership proceedings pursuant to a FPAA. The cases are concerned with "drawing the line" between those matters that continue to be subject to the standard rules for resolution of tax liability at the taxpayer level through deficiency proceedings, and those that must first be determined at the partnership level under TEFRA through the issuance of a FPAA. *See Roberts*, 94 T.C. at 860. The cases establish that the IRS cannot assess taxes for partnership items for a given year at the partner level without first making a determination at the partnership level *for the same year*. These cases have nothing to say about the effect of finalized partnership level proceedings on either partner or partnership level proceedings *in future years*.

Furthermore, *Roberts* and *Gustin* rely on a reading of § 6229(a) as a separate statute of limitations (it is not clear to what extent the *Quick* opinion also relies on this reading). *Roberts*, 94 T.C. at 860, *Gustin*, 83 T.C.M. at *6; *Quick*, 110 T.C. at 182. The Federal Circuit's ruling in *AD Global* establishes that § 6229(a) is not a statute of limitations, negating any precedential value those first two cases might have had on the question of whether partnership level items from a closed year are 'fixed' for other tax years.

In *Roberts*, the IRS issued deficiency notices to the petitioners for the years 1980 and 1983. The petitioners were members of three partnerships and claimed pass-through losses from the partnerships for those two years. According to the IRS, the amount of losses exceeded the amount petitioners actually had at risk in the partnerships and had to be reduced accordingly. Since the amount of allowable loss was a partnership 'affected item,' and there had been no FPAA for the challenged years, the petitioners argued that the court lacked jurisdiction over the deficiency proceeding. The court held that although the IRS could not redetermine 1980 and 1983 partnership items outside a partnership level proceeding, it could take the items as filed into account in partner level proceedings as if they had been finally determined through an FPAA. The court relied at least in part on the assumption that the IRS was barred from adjusting the partnership items directly by the three year time limitation period presumably specified in § 6229(a).

*Gustin* involved a situation closely analogous to *Roberts*. Again, the IRS was challenging the amount of loss claimed by the petitioners. The IRS asserted that the loss claimed for 1997 exceeded the petitioners' basis in the partnership. No partnership level proceeding for 1997 had been started or completed. As in *Roberts*, the court held that the IRS could treat the 1997 partnership return as filed as a final determination and go forward with the deficiency proceeding for the affected item. *Gustin* follows *Roberts* in its reading of § 6229(a).

The decision in *Quick* does not appear to rest on a reading of § 6229(a) as a separate statute of limitations, although the court clearly reads it as such. *Quick* 110 T.C. at 182. However, the facts of *Quick* make it inapplicable to the present case. Not only does *Quick* involve a deficiency, or partner level, proceeding, but it also involves an attempt by the IRS to reopen years for which it already issued FPAAs. The IRS wished to characterize losses for the years 1989 and 1990 as passive, rather than non-passive. However, partnership level proceedings for those years had already taken place and the IRS had failed to challenge the reporting of the business activity. *See Id.* at 186. The court held that the IRS was bound in the partner level proceeding by the outcome of the determination it had already made at the partnership level. *Quick* has absolutely no bearing on the present case because the IRS has not engaged in any prior partnership level proceedings for any of the years in question.

D.    <u>"Assessment" and "Adjustment"</u>

In one more attempt to shift the focus from 2000 to 1999, the Plaintiffs cite *PK Ventures, Inc. v. Comm'r*, 91 T.C.M. (CCH) 806, *45 (2006), which states, "In the absence of a valid FPAA for a particular year, neither respondent nor the Court may adjust partnership items for that year." (citing *Maxwell v. Comm'r*, 87 T.C. 783, 788-89 (1986)). In its brief, the Defendant asserts that it is not making an "adjustment" to 1999 items, but only making a "calculation," (Def.'s Br. 12) while Plaintiffs argue that in the partnership context, "adjustments" and "calculations" are synonyms (Pls.' Rep. Br. 8). Regardless of the terminology used, it is clear that the IRS is not attempting to assess tax for 1999 through the 2000 or 2001-2003 FPAAs. As emphasized above, both § 6501(a) and § 6229(a) refer to assessments only and have nothing to say about when adjustments or calculations are or are not barred.

As for adjustments, TEFRA defines a "computational adjustment" as "the change in the tax liability of a partner which properly reflects the treatment under this subchapter of a partnership item." §6231(a)(6). The IRS issued an FPAA for the years it wishes to make computational adjustments (2000 through 2003); the IRS is not attempting to change the partners' tax liability for 1999 through the FPAAs at issue in this case. *PK Ventures* does not prevent the IRS from making the type of "calculation" allowed in *Barenholtz*.

Section 6214(b) of the Tax Code, while perhaps not dispositive of the issue, is informative. It states:

> The Tax Court in redetermining a deficiency of income tax for any taxable year or of gift tax for any calendar year or calendar quarter *shall consider such facts with relation to the taxes for other years or calendar quarters as may be necessary* correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other year or calendar quarter has been overpaid or underpaid.

I.R.C. § 6214(b) (emphasis added). Although on its terms, this section appears to support the Government's position directly, the Plaintiffs assert that the IRS has previously stated that § 6214 does not allow the Government to challenge a prior year's partnership items. *See* Pl. Br. at 22 (citing IRS Field Service Advisory 200112005 (Dec. 7, 2000)). Even aside from the fact that it contains a disclaimer that it is not binding precedent, the Field Service Advisory does not support Plaintiffs' reading of § 6214(b).

The Advisory details the dichotomy between the adjustment of partnership items under TEFRA and the adjustment of other, non-partnership items under the tax code. It states, "The Service is generally prohibited from assessing a deficiency regarding a partnership item without first making the appropriate adjustments to the partnership items in a partnership level proceeding." Yet again, the cited authority does not mention whether *in properly adjusting items in a partnership-level proceeding*, the IRS may reach back to re-calculate a closed-year item. If anything, the Advisory supports Defendant's position. It states, "The Tax Court *may consider* the partnership items [for preceding years] only in a partnership proceeding, not in a deficiency proceeding, even if an FPAA has been issued." In this case, the IRS did make the appropriate adjustments at the partnership level before assessing a deficiency against individual partners.

Another Field Advisory Opinion, not cited by the parties, contradicts the one cited by Plaintiff and directly supports Defendant's position. *See* IRS Field Service Advisory TL-N-3760-92, 1992 WL 1355750 (Mar. 20, 1992). The Advisory interpreted § 6214(b), specifically in the TEFRA context, to allow the IRS to "recompute" partnership losses for closed years in order to calculate an individual partner's deficiency in open years. The Advisory quoted a Tax Court opinion which stated:

> Section 6214(b) says that we have no power to determine an overpayment or underpayment of tax for any year not in issue which would form the basis of a refund suit or an assessment of a deficiency. It does not prevent us from computing, as distinguished from 'determining', the correct tax liability for a year not in issue when such a computation is necessary to a determination of the correct tax liability for a year that has not [sic] been placed in issue.

*Id.* (quoting *Lone Manor Farms, Inc. v. Comm'r*, 61 T.C. 436, 440-441 (1974), *aff'd*, 510 F.2d 970 (3d Cir. 1975) (table)).

*Lone Manor Farms* goes on to say:

> Nor is the rationale of the decided cases limited to situations where the recomputation of the tax liability for the barred year involves the propriety of omissions or deductions from gross income for such year; it extends to a recomputation of the tax liability itself, even though no adjustments are made to taxable income.

*Id.*

### E. Allowing Re-Computation of Closed Year Returns Does Not Violate the Purpose of TEFRA

The Plaintiffs repeatedly point to TEFRA's goal of uniformity in treatment of partners as support for their position that partnership items outside the limitations period are forever fixed and final. *See* Pls.' Br. 19. However, the Plaintiffs fail to explain precisely how disparate treatment would result from the Government's position or how the principles of TEFRA would be violated. *Id.* The uniformity envisioned by TEFRA is uniformity among partners for a given year. That is, TEFRA ensures that, in any given year, items are determined first at the partnership level, and the results of partnership-level determinations are applied uniformly among all individual partners. *E.g., AD Global*, 67 Fed. Cl. at 659. This is in contrast to the pre-TEFRA situation, in which simultaneous litigation involving different partners could result in different partners being treated differently for tax purposes.

The Government's 2000 and 2001-2003 FPAAs do not violate this principle. Assuming 1999 is a closed year, the IRS will re-calculate items from 1999, but will not re-assess any taxes for that year. Rather, any resulting adjustments will be made at the partnership level, through the 2000 and 2001-2003 FPAA proceedings. Those results will be applied uniformly to each partner for those open years. Plaintiffs have not identified any lack of uniformity that will result from this approach. Plaintiffs seem to be arguing that consistency and uniformity will be abrogated because different tax *years* will be treated differently (the final calculations for 1999 will be inconsistent with those for 2000-2003). They cite no authority for the proposition that TEFRA sought to create this kind of consistency between different tax years, as opposed to consistency among individual partners in any given year.

Plaintiffs also claim that the IRS should have challenged the 1999 tax return when it was filed, and that it would be unfair to let the Government challenge items from 1999 now that the limitations period has run. *See* Pls.' Rep. Br. 12. The Defendant counters that the 1999 return did not contain sufficient information to alert the IRS that a challenge was warranted. Moreover, Plaintiffs' position would require the IRS to audit every partnership return every year, a result that is clearly impracticable. *See* Def.'s Br. 26; *Cf. Bufferd*, 506 U.S. at 528 (using the fact that the corporate return contained insufficient information as an additional reason for its holding).

Plaintiffs' position would prohibit the IRS from ever challenging the tax basis of a partnership sale of assets – but not a sole taxpayer's sale – more than three years after the basis was originally established, regardless of how long the assets were held before the sale occurred.  Yet Plaintiffs admit, "The cost basis of the Invitrogen Stock can only be determined by considering events that occurred in 1999. . . ."  Pls.' Br. 26.  That supports the Government's argument that allowing recalculation of closed years is necessary to prevent stealth reporting.  Otherwise, so long as a partnership waits to sell an asset until its basis calculation reaches back more than three years, the IRS can never challenge the basis of that sale.

Even if partnership returns were sufficiently informative to disclose transactions affecting the computation of possible future partnership items, requiring adjustment in the first possible year would be administratively burdensome.  By definition, the transactions being reported have no tax consequences in the year they occur.  Indeed they may never have tax consequences – the Invitrogen stock might never be sold.  It is far more efficient to correct the values when a taxable transaction has occurred.

VI.      Conclusion

For the reasons discussed above, we hold that the IRS is not barred by either § 6501(a) or § 6229(a) from re-calculating items from closed years for purposes of assessing taxes in open years.  **The Defendant's cross motion for partial summary judgment is hereby GRANTED and the Plaintiffs' motion for summary judgment is DENIED.**

**The parties shall file a Joint Status Report on further proceedings, no later than June 4, 2007.**

**IT IS SO ORDERED.**

  /s/ Lawrence M. Baskir
  LAWRENCE M. BASKIR
  Judge